MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. C. H. RINES & CO.

Decided January 14, 1905.

**1.—Railroads—Refusal to Deliver Freight—Penalty.**

Where a railroad company converted a carload of onions by an unauthorized sale to pay freight charges, and so was unable to deliver it to the consignee's order, it was not liable to the penalty of five percent of the value thereof per month, as prescribed in article 4496, Revised Statutes, for refusal to deliver freight, and negligent detention thereof beyond a reasonable time, since the legal result of an inability to deliver at all, and of a negligent detention of property transported, is plainly distinguishable.

**2.—Same—Measures of Damages—Freight Charges Deducted.**

For the unlawful conversion of the car of onions plaintiffs were entitled to recover the value of the onions at the place of destination, less the unpaid freight charges, constituting a lien thereon, and a verdict to that effect was equivalent to a finding against plaintiffs for damages because of negligence in transportation.

Appeal from the County Court of Tarrant. Tried below before Hon. R. F. Milam.

*T. S. Miller, Stanley, Spoonts & Thompson* and *Marshall Spoonts,* for appellant.—1. Where the allegations of plaintiffs petition as to the alleged tort or breach of contract is predicated upon conversion of a shipment, the measure of damages is the value of the shipment at the time it was converted, less the freight charges for the transportation of said shipment, together with the legal interest thereon from the date of the conversion, and the statute of five percent per month penalty for failure to deliver freight at the regular or appointed time has no application. Rev. Stats., arts. 321, 4494, 4496; General Laws, 4th Leg., 2d Sess., pp. 56, 57; St. Louis S. W. Ry. Co. v. Kay & Co., 85.Texas, 558; Houston, E. & W. T. Ry. Co. v. Campbell, 45 S. W. Rep., 2.

2. When a carrier has carried a shipment of goods and is ready to deliver same, it is entitled to its full freight, regardless of whether or not they are damaged. Hutchinson on Car., arts. 443, et seq.; Texas & Pac. Ry. Co. v. Klepper, 69 S. W. Rep., 426; Gulf, W. T. & Pac. Ry. Co. v. Browne, 66 S. W. Rep., 342; Ry. Co. v. North Texas Grain Co., 74 S. W. Rep., 567.

*Robert G. Johnson,* for appellee.

CONNER, Chief Justice.—Appellees, on January 19, 1903, shipped a carload of onions from Mora, Minnesota, over the Great Northern Railway, to St. Paul, Minnesota, at which point the destination of the car was changed to Fort Worth, Texas, to which latter point it was transported from St. Paul over connecting lines of railway to appellant's line at Ray, Texas, and thence to Fort Worth. At St. Paul the car was billed to Fort Worth, and consigned to appellees, "own order, notify Montgomery Grocery Company," with privilege of inspection. The car arrived at Fort Worth on January 28, 1903, and Montgomery & Co. were at once notified thereof. The onions were found to be in a frozen and badly damaged condition, and Montgomery & Co. refused to receive them at the market price, but offered appellees' agent or broker in Fort Worth $260 for them, which was sixty percent of the value of the onions in Fort Worth had they been undamaged. Upon the refusal of Montgomery & Co. to receive the car, appellant addressed a notice thereof to appellees at St. Paul, not being informed of their residence at another place, or of the fact that they had an agent in Fort Worth, and, not having heard from them, on February 5, 1903, shipped the car to Dallas, Texas, for disposition, no favorable market therefor having been found in Fort Worth. In the meantime, however, appellees' agent at Fort Worth notified them of Montgomery & Co.'s offer, and on February 5, 1903, after the said shipment to Dallas, but before the actual

sale of the onions there, demanded said car of appellant's agent at Fort Worth, at the time offering, as we infer, to pay the freight due thereon, amounting to $194.50. Appellant failed and refused to deliver the car of onions as so demanded, and this suit was instituted on July 18, 1903, to recover $240 as damages for the depreciated value of the onions because of alleged negligence in transportation, and $260 as the value of the same at the time of their conversion, and the further sum of five percent per month upon their value ($500) at the time of shipment, because of unlawful detention of said onions beyond the time at which they should have been delivered to appellees.

The court submitted the issue of alleged negligence in transportation, and also the issue of the alleged conversion and unlawful detention, and instructed the jury, in event they found for appellees on the latter issue, to find for appellees the value of the onions in the condition they were in at the date of conversion, and the further sum of "five percent per month on the value of said onions in Fort Worth to this date." The trial, which was had on February 18, 1904, resulted in the following verdict, upon which judgment in the sum of $422.50 was rendered: "We, the jury, find for the plaintiff $260, with five percent per month penalty from February 1, 1903, to February 17, 1904. G. S. Miller, Foreman."

The principal question, in substance, raised by the various assignments of error, is, whether this case comes within the purview of article 4496 of the Revised Statutes, authorizing, under certain circumstances, the penalty assessed by the verdict of the jury.

We quote as pertinent the following articles of our Revised Statutes:

"4494. Every such corporation shall start and run their cars for the transportation of passengers and property at regular times, to be fixed by public notice, and shall furnish sufficient accommodations for the transportation of all such passengers and property as shall, within a reasonable time previous thereto, offer or be offered for transportation at the place of starting, and [at?] the junction of other railroads, and at sidings and stopping places established for receiving and discharging way passengers and freights, and shall take, transport and discharge such passengers and property at, from and to such places on the due payment of the tolls, freight or fare legally authorized therefor."

"4496. In case of the refusal by such corporation or their agents so to take and transport any passenger or property, or to deliver the same, or either of them, at the regular[ly] appointed time, such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit, and in case of the transportation of property shall in addition pay to such party special damages at the rate of five percent per month upon the value of the same at the time of shipment, for the negligent detention thereof beyond the time reasonably necessary for its transportation; provided, that in all suits against such corporation under this law the burden of proof shall be on such corporations to show that the delay was not negligent."

Without stopping to inquire whether the penalty denounced in the statute can, under any circumstances, be imposed in a case of interstate shipment, and giving article 4496 that strict construction to which it should be subjected, as indicated by many authorities, including our

Supreme Court in the case of Railway Company v. Campbell (45 S. W. Rep., 2), we have concluded that the penalty therein has no application in cases like this. This case is not one of negligent detention as we construe the facts, but one of conversion. The onions were, in legal effect, converted by appellant, certainly, by a sale thereof not in accordance with articles 328 and 329 of the Revised Statutes (Railway Co. v. Klepper, 29 Texas Civ. App., 590, 69 S. W. Rep., 426; Gulf, C. & S. F. Ry. Co. v. North Texas Grain Co., 32 Texas Civ. App., 93, 74 S. W. Rep., 567), if not by the unauthorized removal from Fort Worth to Dallas. Ordinarily the measure of damages for an unlawful conversion of property is its value at the time of conversion, with interest at the legal rate and costs of suit, and the imposition of greater damage in the way of a penalty is not permissible unless clearly authorized by the statute. The article of the statute under consideration provides for both an absolute refusal to deliver property transported, and for a negligent detention thereof. Omitting terms not necessary to here insert, it reads: "In case of the refusal . . . to deliver the same, . . . such corporation shall pay to the party aggrieved all damages which shall be sustained thereby, with costs of suit, and in case of the transportation of property shall, in addition, pay to such party special damages at the rate of five percent per month upon the value of the same at the time of shipment, for the negligent detention thereof beyond the time reasonably necessary for its transportation." The legal result of an inability to deliver at all, and of a negligent detention of property transported thus, seems to us plainly distinguishable. The imposition of the penalty in cases of negligent detention manifests the legislative intent to exclude the right to the penalty in case where there is a total failure through inability to deliver property received for transportation by a carrier. Any other construction of the statute under consideration would, as we conclude, lead to unreasonable results, which, in the absence of clear purpose to that effect, should not be held to have been within legislative contemplation. While doubtless wrongful, in a legal sense, to fail or refuse to retransport the onions from Dallas, and deliver them to appellees at Fort Worth, as demanded, yet there is not a suggestion that such failure was wanton, or with oppressive intent, and instances may easily be imagined where, under somewhat similar circumstances, property in possession of a carrier is negligently lost or destroyed, and hence to deliver which there must be a refusal in one sense of the term, but in such cases it could hardly have been intended by the enactment in question to confer upon the consignee the right to recover the penalty for such period of time as the law of limitation and the duration of litigation might permit.

We conclude that the judgment in appellees' favor for the penalty mentioned was unauthorized, and to that extent, and upon that issue, the judgment is reversed and here rendered for appellant.

The remaining question presented by the assignments is, whether the unpaid freight should have been deducted from the amount of appellees' recovery, as appellant sought to have done, and we have concluded that it should. Under the issues tendered and submitted by the charge, the verdict and judgment is in effect a finding and judgment against appellees, so far as this appellant is concerned, for damages because of

negligence in transportation. (Jeter v. Gouhenour, this day decided by us.) Assuming, then, that appellant was without fault in carrying, and it being undisputed that the freight charges on the car of onions was $194.50, for which a lien upon the onions existed, and without the payment of which appellees were not entitled to delivery (Railway v. Klepper, supra; Railway v. Browne, 66 S. W. Rep., 341; Railway v. North Texas Grain Co., supra), it seems to plainly follow that the value of the onions at the time appellees made demand therefor, less the lawful freight charges, would constitute the measure of appellees' damage because of the failure to deliver. This difference, which amounts to $65.50, is all that appellees thereby really lost by reason of appellant's acts, and when this sum is allowed, with interest and costs of suit, appellant has in a legal sense made full compensation, and compensation is the basis of the rule for the measure of damages applicable herein.

The judgment in appellees' favor for $260, as the value of the property converted, will accordingly be reformed, and here rendered for appellees for the sum of $65.50, with interest thereon at the legal rate from the 5th day of February, 1903, together with all costs incurred below, the costs of appeal and of this court being taxed against appellees.

*Reformed and Rendered.*