James E. FARRIS, Appellant,

v.

KOHLMEYER & COMPANY et al., Appellees.

No. 15814.

Court of Civil Appeals of Texas, Houston (1st Dist.).

Nov. 18, 1971.

Rehearing Denied Feb. 10, 1972.

**434**

Reynolds, White, Allen & Cook, Brown, Kronzer, Abraham, Watkins & Steely, Houston, W. T. Bennett, Huntsville, of counsel, for appellant.

James G. Ulmer, B. Joe Thomson, Houston, Baker & Botts, Houston, of counsel, for appellee Kohlmeyer & Co.

John L. McConn, Jr., Charles G. King, III, Houston, Butler, Binion, Rice, Cook & Knapp, Houston, of counsel, for appellee Franklin Bank.

PEDEN, Justice.

Venue matter. Appeal from the overruling of two pleas of privilege filed by James Farris, one in response to the original action of Kohlmeyer & Co., and the other to the cross-action of Franklin Bank.

The controverting affidavit filed by Kohlmeyer & Co. relied on Sec. 4 of Art. 1995, Vernon's Texas Civil Statutes, and that filed by Franklin Bank relied on both Sec. 4 and Sec. 7 of the same statute. Both of Farris' pleas were heard by the trial court in the same hearing.

█ The record does not contain findings of fact or conclusions of law filed by the trial court and there is no indication that any were requested, so it is our duty to affirm the order of the trial court if it can be done on any reasonable theory supported by the evidence and authorized by law.

### Kohlmeyer's Suit

In its original petition Kohlmeyer sued Franklin Bank of Houston, Main Bank of Houston, First National Bank of Huntsville, Texas, J. R. Lyne, Jr., Jas. E. Farris, Bob D. Grundy, R. Frank Stovall, Jr., Iven Sterling Hudspeth, Jr., and Bennie Ray, alleging that Kohlmeyer is a stock brokerage firm and that defendants Hudspeth and Ray are residents of Harris County and former employees of Kohlmeyer who acted in concert and conspiracy with one or more of the other defendants in a fraudulent scheme to kite checks, one or more of the defendants having traded in securities through Kohlmeyer at Houston using checks which were delivered to Kohlmeyer but were drawn on insufficient funds and therefore worthless. That in effectuating this scheme, the float time (before the checks would reach the bank on which they were drawn) was used to obtain funds from Kohlmeyer on its good checks and deposit those to cover bad checks.

That one or more of the defendant banks was involved in issuing its own cashier's checks when it knew it did not have sufficient funds in the account for which the check was issued to cover it. Pleading with more particularity, Kohlmeyer then set out seventeen alleged disputes between the parties, and stated: "As a direct and proximate result of each and all of defendants' acts of conspiracy and fraud, the plaintiff has been damaged in an amount not yet determined, for which reason plaintiff seeks recovery of its damages against each and all of the defendants, jointly and severally, together with interest and attorneys' fees, and exemplary damages of not less than $100,000."

Kohlmeyer prayed for discovery and accounting and asked that on final trial it have declaratory judgment that it owes nothing to any of the defendants; also for a determination of the liability of the de-

fendants, jointly and severally, to the plaintiff, for damages and accounting and for general relief.

In response to the plea of privilege filed by the appellant, James E. Farris, to transfer this cause to Walker County, his residence, Kohlmeyer timely filed its controverting affidavit, referring to and incorporating therein its original petition alleging that only two of the nine defendants reside or have a place of business outside of Harris County, Texas and relying on exception 4 of the Venue Statute, whose pertinent provision is:

"If two or more defendants reside in different counties, suit may be brought in any county where one of the defendants resides. . . ."

■ It is pointed out in 1 McDonald, Texas Civil Practice § 4.10.2 (rev.ed.1965) that under exception 4 the venue facts are: 1) One defendant resides in the county of suit. This fact must be established by affirmative evidence. 2) The party asserting his privilege is at least a proper party to the claim against the resident defendant. This may be established by reference to the controverting affidavit and the petition to show the nature of the suit. 3) The Plaintiff has a bona fide claim against the resident defendant, and he must plead and prove by a preponderance of the evidence each element of this bona fide claim. It must be the same claim asserted in the controverting affidavit.

The appellant's first two points of error are that the trial court erred in overruling his plea of privilege because Sec. 4 of Art. 1995 is not applicable since 1) Kohlmeyer did not plead a joint cause of action against either of the resident defendants and the non-resident appellant, 2) Kohlmeyer did not plead a cause of action against either of the resident defendants and the non-resident appellant so intimately connected that the two may be joined under the rule intended to avoid a multiplicity of suits.

We overrule these two points. We have noticed the general allegations of conspiracy in a check kiting scheme between resident defendants Hudspeth and Ray and "one or more of the other defendants." In sub-paragraph 14 of Kohlmeyer's original petition, one of the seventeen specific incidents to which we have referred, Kohlmeyer alleged that Franklin Bank "worked out various schemes and arrangements with Mr. Farris, vice president of the Huntsville Bank, to support and keep alive the check kiting scheme."

■ This amounts to a sufficient allegation that the appellant participated in the conspiracy along with the resident defendants, Hudspeth and Ray, to satisfy the requirement of exception 4 that the plaintiff plead a cause of action against a resident defendant (Hudspeth) and the non-resident defendant (Farris) so intimately connected that the two may be joined under the rule intended to avoid a multiplicity of suits. McCollum v. Merchants Factors Corp. of Texas, 358 S.W.2d 183 (Tex.Civ.App.1962, no writ); Atlas Roofing Co. v. Hall, 150 Tex. 611, 245 S.W.2d 477 (1953).

■ Kohlmeyer's original petition is a suit for declaratory judgment and for indemnity, but it is also one for compensatory and exemplary damages. It contains an allegation that Hudspeth, in the last week of May, 1970, made checks payable to Kohlmeyer totalling about $540,336 that were returned "insufficient funds," and that Kohlmeyer was required to make these checks good; that they were given by Hudspeth as part of the check kite scheme. The petition alleges a loss. The exact amount, if any, won't be ascertained until final trial.

We consider that these allegations of some damage without a statement as to their exact amount are sufficient to satisfy the requirement that damages be alleged in order to constitute a cause of action.

The appellant's sixth point of error is that the evidence was insufficient to support a cause of action against any resident defendant in a cause of action against such resident defendant and the non-resident defendant so intimately connected that the two may be joined under the rule intended to avoid a multiplicity of suits.

We overrule this point. From evidence adduced at the hearing on the plea of privilege the trial judge was entitled to conclude that a resident defendant, Hudspeth, kited checks by drawing checks on the bank in Huntsville when his account there did not have funds to cover them, by depositing those checks in the Downtown (now Franklin) Bank, using the float time, drawing checks on his overdrawn account at the Downtown Bank and depositing them in the Huntsville bank to cover his overdraft there. Both Hudspeth and Farris, a vice president of the bank at Huntsville, testified by deposition that Hudspeth left some blank checks in Farris' possession signed by Hudspeth. Farris filled them out and deposited them in Hudspeth's account at Hudspeth's request. Otherwise, there would have been an overdraft at the Huntsville bank. Farris related that on occasions he had issued a cashier's check out of Hudspeth's account when there were insufficient funds in the account to pay the check, had held up the debit memo and had paid out items that were in the account for collection before he had sufficient funds in the account to pay for the cashier's check.

The exhibits admitted in evidence show that between May 19 and May 21, 1970, Hudspeth drew a check on the Huntsville bank in favor of the Franklin Bank (it was then the Downtown Bank) for $97,856 while his balance at the Huntsville bank was less than $13,000 and in favor the Huntsville bank on the Franklin Bank for $87,940.50 although his account with the latter was heavily overdrawn. From this evidence we presume in support of the order that the trial court found that Hud-

speth was thus fraudulently maintaining the appearance of a substantial balance in both accounts, thereby continuing to buy securities from Kohlmeyer by giving what seemed to be good checks, so that upon discovery of the scheme Kohlmeyer was holding over $500,000 worth of Hudspeth's bad checks.

The trial judge was entitled to conclude from the evidence adduced that Kohlmeyer had established by a preponderance of the evidence a cause of action for fraud against Hudspeth: that he misrepresented to Kohlmeyer that he had funds to cover the checks he gave Kohlmeyer while, in fact, the balances that appeared in his accounts at the drawee banks were false balances based on kited checks, that Kohlmeyer sold him securities for such bad checks and, that Kohlmeyer was damaged to the extent of over $500,000 in bad checks it now holds.

Defendant Ray testified that he knew of no conspiracy to kite checks, but was called as a witness by Kohlmeyer, an adverse party, and Kohlmeyer was not bound to accept his testimony as true. Rule 182, Tex.Rules of Civil Procedure. There was other evidence of conspiracy, some of which was in the voluminous deposition testimony admitted in the trial court. Even though the trial judge stated that he limited his consideration to that part of the deposition testimony which was called to his attention, all of it that was admitted in evidence is before us.

■ We conclude that this evidence of conspiracy and damages was sufficient to support a cause of action against resident defendant Hudspeth in a suit against Hudspeth and Farris so intimately connected that the two may be joined under the rule intended to avoid a multiplicity of suits.

Having so ruled, we do not reach the other points raised by the appellant in the Kohlmeyer case.

## Franklin Bank's Cross-Action

Franklin Bank (formerly Downtown Bank) filed a cross-action in response to the petition of Kohlmeyer & Co., naming as cross-defendants Kohlmeyer, First National Bank of Hunstville, Jas. Farris, R. Frank Stovall, Jr., Iven Sterling Hudspeth, Jr. and Bennie Ray, and naming Thos. J. Smith as a third party defendant.

Farris timely filed a plea of privilege to be sued in Walker County, Texas; as noted, Franklin Bank's controverting affidavit relied on exceptions 4 and 7 of Art. 1995, the Venue Statute.

The appellant's first five points of error concern exception 7, and his last seven points concern exception 4. We have decided that the appellee is entitled to have venue retained in Harris County under exception 4, so it is not necessary for us to consider whether exception 7 is also applicable.

Farris' sixth and seventh points are that the trial court erred in overruling his plea of privilege because 6) Franklin Bank did not plead a joint cause of action against either of the resident defendants and the non-resident appellant and 7) Franklin Bank did not plead a cause of action against either of the resident defendants and the non-resident appellant so intimately connected that the two may be joined under the rule intended to avoid a multiplicity of suits.

Franklin Bank's cross-action, which was incorporated into its controverting plea, alleged with particularity a joint cause of action against Hudspeth, whom it alleged and proved to be a resident of Harris County, and the appellant, stating that Hudspeth and others engaged in a fraudulent scheme to defraud Franklin Bank and kite checks, and that from time to time Farris, the appellant, and others aided, abetted and conspired with Sterling Hudspeth in furtherance of said scheme. That Farris knowingly concealed the true nature of Hudspeth's account at the Huntsville bank by drawing checks and drafts on Hudspeth's account at Franklin Bank and depositing the proceeds in the Huntsville bank. Such acts are set out in detail in the cross-action, and it further contains an allegation that Farris knowingly conspired with Hudspeth to defraud Franklin Bank.

■ These portions of the cross-action amount to allegations of a joint cause of action arising from the same transactions, allegedly the result of a conspiracy to defraud, and the same evidence would have to be repeated if the suits against Hudspeth and Farris were divided for venue reasons. The two may be kept together to avoid a multiplicity of suits. Stockyards National Bank v. Maples, 127 Tex. 633, 95 S.W.2d 1300 (1936); James v. Drye, 159 Tex. 321, 320 S.W.2d 319 (1959); Atlas Roofing Co. v. Hall, supra; Jefferson Chemical Co. v. Forney Engineering Co., 466 S.W.2d 361 (Tex.Civ.App.1971, no writ).

Appellant's eighth point is based on the assertion that Franklin Bank did not plead a cause of action against the appellant as contemplated by exception 4 in that it did not plead and pray for actual damages, only potential damages.

Some of the pertinent parts of the cross-action are these:

### IV.

"In furtherance of said scheme and conspiracy, and to perpetuate same, among other things, Cross-Defendant Sterling Hudspeth acquired from Cross-Plaintiff a cashier's check dated June 3, 1970, in the amount of $231,703.25, payable to Sterling Hudspeth, a Certificate of Deposit dated June 2, 1970, in the amount of $50,000.00, payable to Sterling Hudspeth, both of which, Cross-Plaintiff alleges are set-offs against the bank account of Sterling Hudspeth which presently has a debit balance.

" . . . .

### X.

"Cross-Plaintiff would show that in the event Cross-Plaintiff is liable on any of

the instruments or claims described in all of the pleadings herein, it asserts liability over against all of the Cross-Defendants and Third Party Defendant, jointly and severally, on the grounds that each of said Cross-Defendants and Third Party Defendant joined in a conspiracy and scheme to kite checks and to defraud Cross-Plaintiff.

### XI.

"As a direct and proximate result of each and all of the Cross-Defendants' and Third Party Defendant's acts of conspiracy and fraud, Cross-Plaintiff has been damaged in an amount presently undetermined for which Cross-Plaintiff seeks recovery of its damages against each and all of the Cross-Defendants and Third Party Defendant, jointly and severally, together with interest, attorneys' fees, and exemplary damages of not less than $100,000.00.

### XII.

"Cross-Plaintiff alleges that it is entitled to set off against the Cross-Defendants and Third Party Defendant, any claims made by any parties, the cashier's check in the amount of $231,703.25, and the Certificate of Deposit in the amount of $50,000.00.

### XIII.

"Cross-Plaintiff would show that if it prevails in all matters and against all claims, demands and suits, relating to the bank account of Cross-Defendant Sterling Hudspeth, it will have a credit balance in which event said balance will be tendered into court so that it can be determined to whom the funds belong.

"WHEREFORE, PREMISES CONSIDERED, Cross-Plaintiff prays that Cross-Defendants and Third Party Defendant be cited to appear and that upon trial and hearing hereof, the Cross-Plaintiff have judgment against Cross-Defendants and Third Party Defendant, jointly and severally, if it is determined that Cross-Plaintiff has any liability to any party in connection with the matters herein, and for such other and further relief, general and special, legal and equitable, to which Cross-Plaintiff may be entitled."

█ We overrule this point. We hold that Paragraph XI of Franklin Bank's cross-action contains the necessary allegation of actual damages.

█ It is well established that in a venue hearing based on allegations of fraud under exception 7, Art. 1995, the plaintiff must plead and prove damages if venue is to be retained in the county where the suit was filed.

"However, it is not necessary in this venue hearing that appellees should establish the exact amount of their damages suffered because of the fraud. True, they did have to establish some damage as part of their cause of action but the exact amount need not be proved." North American Life Insurance Co. v. Wilburn, 392 S.W.2d 364 (Tex.Civ.App. 1965, no writ), and cases cited therein.

Proof of actual damages was made in the hearing in our case by the introduction of the record of Hudspeth's account showing an overdraft of $145,352.34 after discovery of the alleged conspiracy.

The appellant's ninth through twelfth points of error are no evidence or insufficient evidence points concerning the appellee's burden of proof of a cause of action against a resident defendant under pleading to establish either a joint cause of action against the appellant and a resident defendant or a cause of action against a resident defendant so closely connected with one alleged against the appellant that the two may be joined under the rule intended to avoid a multiplicity of suits.

█ We hold that the evidence before the trial judge was sufficient (i. e., a pre-

ponderance) to support his presumed findings that Hudspeth was defrauding Franklin Bank by kiting checks, that he misrepresented to Franklin Bank that he had funds with the Huntsville bank to cover the checks and drafts drawn on that bank payable to the Franklin Bank, that Franklin Bank acted in reliance on this false representation by honoring checks drawn by Hudspeth on his account with Franklin Bank, to which account Franklin Bank had credited the fictitious funds represented by checks from the Huntsville bank. That Franklin Bank was damaged by this scheme by Hudspeth's account being overdrawn when the conspiracy was halted.

We do not suggest, of course, that a more complete development of the facts, as may occur at the trial on the merits, will necessarily produce the same findings.

The order of the trial court is affirmed.